The Judges of the United States Court of Appeals for the Ninth Circuit. Hear ye, hear ye. All persons having business with the Honorable, the United States Court of Appeals for the Ninth Circuit, will now draw near. Give your attention and you will be heard. God save these United States and this Honorable Court. Good morning. Please be seated. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court, as is my colleague to my right, probably to your left, I guess, Judge Dan Bress. His chambers are here in San Francisco. Mine are in Anchorage, Alaska, but I've been sitting with Judge Bress all week. We are both delighted to thank and welcome Judge Lynn, who's here from Texas, helping us out on our calendar this week. It's been wonderful to sit together. Just a little bit of housekeeping. We have three cases that we're going to submit on the briefs without oral argument today. The first is 15-73582, Olmedo Garcia v. Garland. The second is 18-72936, Rodriguez-Ozuna v. Garland. And the third is 20-16496, Larson v. Liberty Mutual. With that, I'm ready to go to the first case on the calendar, which is Cibrian v. Garland. And let me just do a sound check. Can both of you on Zoom hear us okay here in the courtroom? Would you give me a thumbs up or sound? Oh, okay, I can hear you now. Okay, great. In that case, we are ready to hear your argument. Good morning, Your Honors, and may it please the Court. My name is Monica Hamond, and I represent Mr. Marlon Cibrian. I'd like to reserve two minutes for rebuttal, and I'll of several government failures. When DHS detained Mr. Cibrian, it failed to assess his mental health or provide that information to the IJ. The IJ compounded those errors by failing to hold a competency hearing despite indicia of Mr. Cibrian's incompetence. That indicia included, first, his state foster care records detailing his prior state-provided mental health treatment, and second, his behavior during the hearings, including his confusion and his failure to raise or present evidence. The government's errors here caused prejudice. With the proper procedural protections, Mr. Cibrian would have been able to challenge the basis of his removal, provide witness testimony substantiating his claims, and object to the IJ's adverse credibility determination that Mr. Cibrian was not credible based on Counsel, in light of the time available, I'm going to ask you just hypothetically to help me out here with this, because I'm trying to figure out what happens if. If I'm not impressed that the record evidences that there was need for a competency evaluation, but I'm concerned that there's an injunction in place that appears to require that to happen, and I can't see any documentation of that, what would the right outcome be in your view? So, I think in light of the evidence that Mr. Cibrian provided with his petition for review that shows that he has a serious mental health disorder, that the proper remedy is that because DHS failed to assess him at the time and provide that information to the IJ, that was a statutory and regulatory violation that caused prejudice, and so the proper remedy is for a remand for a competency hearing in this case. So are you asking us to assume, we're going to hear from opposing counsel in a minute, it seems you're asking us to assume that the IJ didn't, or that rather the DHS didn't comply with a court order because we can't see that they did. Is that a fair statement?  Yes, so I don't think that you need to assume that in this case because he has provided documentation substantiating his claim that he has a serious mental health disorder and that that information should have been available, but I'd also like to address this court's... We're miscommunicating, then I promise I'll get out of your way, but my question was a little different. I think you're asking me to assume, but truly, correct me if I'm wrong, to assume from the absence of documentation that DHS did not conduct the assessment. That's my assumption, but unless you know something I don't know, do you know affirmatively that the assessment was not done? So what I can provide, Your Honor, is that first, there is no information in the record that DHS complied with those legal obligations, but second, in response to your order asking for more information, I can inform the court that in preparing for this case, we did file a FOIA request asking DHS for his full medical record, and in response, DHS did not disclose any documents that indicated that it had assessed Mr. Sibering's mental health, either at the time when it was supposed to, which was within 12 days of when he was detained, or at any point during the removal proceedings. Okay, I think that answers... The only records... I think that answers my question. Go right ahead. So I would like to address the government's argument that there was insufficient indicia of incompetency before the IJ to have triggered the incompetency hearing under matter of MAM, and specifically, I think this court should focus on two pieces of information. His state foster care records included information that Mr. Sibering had been provided with state provided mental health treatment in response to Mr. Sibering's position at the time, which was that he was not only... He had enemies at school. These were kind of the symptoms that he was describing, that he had enemies at his school, that he dropped out at the 10th grade because he has too much going on in his head, and then on top of that, not only did he drop out, but he became homeless. He was detained by child services, and then child services determined that he needed state provided mental health treatment. Mr. Sibering then later confirmed at AR-175 that he was still receiving. One concern here is that this obviously wasn't exhausted below, and I know it's your position that you weren't required to, but then what we have is materials being presented here for the first time, and I think one could ask, if your position is adopted, are we going to have lots of future cases in which people come forward with new mental health evidence for the first time in the Court of Appeal, and we're going to find ourselves evaluating lots of claims like this with new evidence that nobody's seen before until now? So, two responses, Your Honor. First, in most of these cases, DHS will have complied with its obligation to have provided this information in the first instance, and IJs are often vigilant to the type of information in this case when there is a prior history of mental health treatment, and they follow up on that and ask questions like, was there a diagnosis, or was there any kind of medication that you were taking? And so, in most instances, there will be a record that this court can look at to determine whether or not the IJ abused her discretion in not holding that competency hearing, but in the second place, when that hasn't happened, and there is no information in the record, either the individual will not be able to show that it was an abuse of discretion, and the standard on its own takes care of that floodgates problem, or if it's a question of a person was able to provide information documenting that, that they had a serious mental health condition, then Colman R. makes that very plain, that individuals are allowed to present that kind of extra record evidence, and that's at page 975 of footnote 5. Your Honor, your client, pro se, did identify this issue in the Court of Appeals on his own, and so why was he not able to do so before the IJ or the BIA? So we know the government argues that, Your Honor, and I think Matter of MAM and Franco Gonzalez both foreclosed that interpretation, because Matter of MAM states that individuals are not, that incompetency and mental health disorders are not a static condition, and it presents in different ways at different times, and so the fact that he was able to raise this at one particular time after his hearings doesn't indicate that he was competent or that his mental health disorder wasn't affecting him very severely at the time of his removal proceedings. That's a fair point. I guess the question then is, is there evidence? I mean, you brought forward new evidence here in the Court of Appeals, your client has, on some of these things. Is there evidence that in the years earlier, when he was before the agency, that he was prevented him from raising this then? So, two answers, Your Honor. First, under Franco Gonzalez, the fact that he has a serious mental health condition means that he is not presumed to have been competent throughout the proceedings. That's at page seven of the permanent injunction. But second, it's, and Matter of JSS sets this out, individuals are not required to provide the information about their own incompetency to the court, and that's why there are such detailed regulatory requirements for DHS to provide this information in the first instance, and for the IJ to ask these kinds of questions and hold the competency hearing as soon as there is any information. And I see that I'm running low on time, so I'd like to reserve the balance if the court has no further questions. You may certainly do so. We'll hear from opposing counsel. May it please the Court. My name is Jesse Lorenz, and I represent the Attorney General of the United States. This court should deny this position for review because petitioner's claim fails at every turn. And I'd like to take a moment initially to address the court's order from a couple days ago. I reached out to DHS at the time I was briefing this case, and just yesterday, actually, to ask them about the evaluation. They did evaluate Mr. Cibrian when he was initially detained by them in March of 2017. He was evaluated for Franco class membership. He denied to them any mental health issues. And they have documentation of this. They have documentation of the treatment he's received throughout the course of his time in detention at Otey Mesa Detention Center, which I understand he's no longer at Otey Mesa. But they do have documentation during the time that he was appearing before the immigration judge and the board of the treatment that he was receiving or the request for treatment he was receiving. So this is something that they evaluated at the time he was taken into custody. Counsel, counsel, counsel, why are we just hearing about this? Well, I think that initially you have to look at the matter of MAM framework. We're familiar with the matter of MAM framework. My question is, given the way the issues here were teed up, why is there a void in our record? This is not a great use of our time. And I understand that, Your Honor. This would all be record, extra record evidence at this point. And under the statute, this court's prohibited from considering that. It's not that simple. It's not that simple. Are you aware of a recent case where a person similarly situated who was pro se and alleged incompetence on appeal in which the government confessed error? Not particularly, Your Honor. All right. So if that's not the case, I'll certainly grant you that. Now back up, please, and explain to me why we don't have this in our record. I think, I mean, it's evidence, it's documentation that is extra record evidence. I mean, I think that's the simplest explanation I can get you or give you. DHS informed me that he had never requested the documents from them. And they were not really willing to turn them over to me due to, I believe, privacy concerns. So I think, I mean, we know your position. You filed the motion to strike. We know your position is that it's extra record. I do think it would have been helpful if this case was briefed some time ago. It would have been helpful even to let us know that these documents were out there. It seems like that's something that could have been done. I did include a footnote in my brief that DHS had reviewed my briefs. And they said there was no derogation. No, I saw that. But I mean, this is talking about the existence of documents. Just as even if your legal position is that this is all irrelevant, and you may be correct about that. But just as a matter of helping to decide these cases, it really would have been helpful just to have something from the government identifying the existence of these documents just as we prepared for argument. Sure. I mean, I understand that. But, I mean, we're tied to the statute, you know. And like I said, under MAM, if there's no indicia of incompetency, which none was identified before the immigration judge, DHS wouldn't turn these documents over to the immigration judge. Counsel, I don't want to belabor the point. But my impression, maybe I'm wrong, my impression is that this is new news to opposing counsel. The statute doesn't prevent you from communicating with opposing counsel, so we know whether this evaluation was done where the court order was complied with. I'm going to leave it at that. If you want to go on to the merits, that's fine. But I'm disappointed, and I think we've expressed that. Sure. I understand that, Your Honor. Well, on the merits, I think, as an initial matter, there's no prejudice in this case. I mean, his convictions render him removable under this court's precedent. That also forecloses his eligibility for cancellation or removal. His applications for asylum and withholding of removal also are foreclosed by precedent. He's a former tattooed or current tattooed gang member. This court has held that that's not a particular social group. And he's presented nothing. He argues that he was prejudiced, but he's presented nothing showing any prejudice. There's no claim that he didn't present. He could have presented a different claim. There's just no showing of prejudice. I'd also like to point out that his competency claim is completely unexhausted at this point. That's a mandatory and jurisdictional rule that this court cannot consider that claim. He argues that there were no available remedy as of right, but that there's no support in this court's precedent for that position. Mr. Rennie, just to make sure I understand the exhaustion point, I mean, is there any limit on this? I mean, it was not raised below, but if somebody comes in and says, I was pro se, I labored under a serious mental disability, this wasn't, you know, the Franco procedures were not complied with. I know you say that's not this case, but I'm just trying to understand. Is there some circumstance out there where the government would acknowledge that exhaustion may not be required or would be excused? I mean, Your Honor, as you pointed out, this is not that case. I know this court has not considered a motion to reopen to be a remedy available as of right, but that certainly wasn't an available remedy in this case. The petitioner wanted to raise this before the agency. He certainly could have done that. This is a very shaky ground for you, it seems to me, because there's a court order requiring that these evaluations be done, and you've explained to us this morning that that was done. So in terms of exhaustion, it's not as though this is, as long as the agency complies with that court order, there's not going to be an exhaustion problem, right? The government is certainly going to be on notice of the issue, and we should be moving on to the merits. The alternative is the one that Judge Bress is trying to get you to engage with. You know, that's the nightmare. That's the person who really is terribly disabled and not able to raise it. But as long as, even in that circumstance, right, as long as this court order is complied with, the matter will have been addressed. Well, yes, and I mean, DHS does have procedures for the Franco injunction, and they were followed here, and I mean, outside of the statement. Right, so there's not a, it seems to me, so it seems to me a much more straightforward answer is that there isn't a failure to exhaust here because the agency complied with, as we're just learning for the first time this morning, complied with, and you have an argument, it seems to me a strong one, on the merits. Well, I mean, I think we win on the merits, definitely. But I mean, in the hypothetical scenario, I guess that's assuming that the DHS psychiatrist misses the issue. That's assuming that the pro se individual never raises the issue. That's assuming that the immigration judge who's observing the person in person, and most of the immigration judges at the detention facilities deal with, you know, these kind of issues fairly often, I believe at least. So you're making a, there's a lot of assumptions that somebody would fall through the cracks here. I mean, there's a lot of procedure in place, and again, on this record, we have no initiative. You have the record. We don't have the record. That's the point. We don't have the record. You're telling us that there was the assessment and that he didn't make these allegations. And so it just seems that there's a much easier path, and you're taking the hard one. I'm asking you to look at this record. This is the record that the agency relied on. In this record, he was before an immigration judge several times, and no indicia of incompetency were noted. He had his aunt and his cousin in the courtroom with him. The aunt talked to the immigration judge, testified in front of the immigration judge. Nobody raised any issue. He had, he was assisted in his asylum application, or at least discussed the asylum application with the legal program in Otay Mesa Detention Center, but that's in the record. And they, I mean, you would think that they would have raised some concern about his competency. These are a lot of different people who have looked at this case, a lot of very qualified people. I'm not qualified to tell you what his mental diagnosis is. All I can tell you is that Franco was complied with, in this case, according to DHS. I don't know if that satisfies the hypothetical where somebody somehow slips through the cracks, but there are a lot of procedures in place. Counsel, my point is just that there were a lot of people who looked at this, and it doesn't seem to me that exhaustion is the right answer, because if all of these hoops were jumped through in the way that you've described, this didn't get missed. There simply wasn't an indicia, and on the merits, you have a strong argument. That's all. Well, exactly, and if there's no indicia, there's no reason that this would be in the records. Excuse me. Counsel, excuse me. Judge Lynn's trying to ask a question. If DHS had not conducted the evaluation, and we're relying on you, and you're relying on DHS in concluding that that actually happened, you haven't seen it either, I take it. But let's assume that it did not happen. Would you be confessing error? If it did not happen? Yes. I don't think so, because on this record, there's no indicia of incompetency. And, again, that's an observation that the immigration judge makes when the petitioner is before him or her, and that's an observation that, you know, we start with the presumption of competency. In this case, nobody noted any indicia of incompetency at the time of the hearing. And so on this record, no, I would not concede error. So a violation of the order that that evaluation be conducted would not be dispositive of the issue? I see what you're saying, but I think on this record, there's no indicia of incompetency. And on this record, because I agree, I believe in the exhaustion argument. On this record, I don't think I would concede error. But the hypothetical, as far as I understand, the hypothetical is not the case here. Judge Best, did you get your question answered? Yeah. Thank you very much. Counsel will hear from opposing counsel. Thank you. Thank you, Your Honor. I just have three quick points. First, if I heard government counsel correctly, Mr. Cibrian was receiving some kind of treatment while he was in detention, and that information was error in not providing that to the IJ in the first instance. Second, on the question of exhaustion, I think that whatever standard this court adopts for when something needs to be exhausted in this case, when those administrative remedies were available, I think at the very least it applies to an individual who was pro se incompetent and because he had a serious mental health disorder. And the government's argument here that Mr. Cibrian should have raised these regardless of those circumstances really indicates that if this court does not recognize that administrative remedies need to be practically available, that claims like this will be effectively foreclosed from any kind of review. It was incumbent on DHS and the IJ to provide the record of Mr. Cibrian's incompetency in the first instance, in particular because of his serious mental health disorder and his history of mental health treatment from the state. And in not doing that, when the IJ and the BIA don't notice, there is no record that the individual can point to on appeal to ever have that issue addressed. On the second issue of prejudice, I just want to note that not only does the government cite the wrong standard, it is not whether or not he had a plausible claim for relief that he could prove at this instance, but only whether or not that he could show that the error here potentially affected the outcome of the proceeding. And that happened in particular because of something that a government counsel raised, Ms. Ramos, his cousin, testified, but the IJ cut off her testimony and did not actually allow her to speak, in part because the IJ had prejudged his case and said, well, why do we allow individuals with tattoos to ask for relief in the country? And that conversation is at AR 161 to 163. And I think because Mr. Cibrian was incompetent, he was unable to object to that, and there was prejudice in this case. Thank you, Your Honors. Thank you both for your argument. Are there any further questions? No. All right. Thank you both for your argument. We appreciate it very much. We'll take this case under advisement and go on to the next case on the calendar, please.
judges: CHRISTEN, BRESS, Lynn